JOSEPH A. WALLACE, Appellant, v. R. A. FOSTER et al., Appellees.

No. 41219.

FEBRUARY 9, 1932.

Shull & Stilwill, for appellant.

A. R. Strong and Gleysteen, Purdy & Harper, for appellees.

FAVILLE, J.—On or about the first day of June, 1927, a special election was called in Woodbury County, at which time there was submitted to the voters of said county the proposition of issuing certain road bonds "for the purpose of providing funds for draining, grading, and hard-surfacing the primary roads of the county." At said election a majority of the votes were in the affirmative. A large portion of the bonds so authorized has been issued and sold, and this action is brought to enjoin the board of supervisors from issuing and selling some $315,000 of the bonds so authorized, and from expending the

proceeds thereof in the manner contemplated by the board of supervisors.

Briefly stated, it is the contention of the appellant that the board of supervisors contemplate and intend to use the proceeds of said bonds for the purpose of building and improving streets wholly within the corporate limits of Sioux City, and which appellant contends were no part of the primary roads of Woodbury County at the time of said bond election.

After the enactment of the primary road law and prior to said bond election it appears that the State Highway Commission selected and designated two primary roads (with others) in Woodbury County, known as Primary Road No. 75 and Primary Road No. 20. Such selection and designation was evidently approved by the Federal Government. An official map showing said primary roads so selected and designated was filed by the State Highway Commission with the County Auditor of Woodbury County. Said Primary Roads Nos. 75 and 20 terminated at the corporate boundaries of Sioux City. This is shown on the official map. It appears that from the city limits of Sioux City the said Primary Roads Nos. 75 and 20 by appropriate markings were routed over city streets, the entire mileage of both routes being paved, bridged, and under the jurisdiction of the city council of the city of Sioux City as regularly established streets of said city. This was the situation at the time of the bond election.

It now appears that the Highway Commission proposes to route the continuation of Primary Road 75 from the corporate limits of Sioux City over certain streets, and for about 4.8 miles through said city over an entirely new course and on a new right of way, much of which has never been used for highway purposes. A similar plan is proposed as to Highway No. 20. It is for this purpose that the bonds in question are proposed now to be sold.

Can the board of supervisors turn over the proceeds of the bonds voted at the June, 1927, election to the Highway Commission for said purpose?

A brief review of the history of a portion of the primary road legislation may be of service. The original act with regard to the selection of primary roads was Chapter 249 of the Acts

of the Thirty-seventh General Assembly. Section 2 of said act is as follows:

"The State Highway Commission is hereby authorized and directed, as soon as may reasonably be done, to designate and select from the roads which are now or hereafter may become rural post roads, including a part of each of the ninety-nine counties of the state and including not less than two thousand nor more than six thousand miles, giving equitable consideration to the claims of each county, said system to be so selected and designated as to at least meet the requirements of the federal act and a sufficient number of miles to at least require the full appropriation provided for by the federal act during the life of said statute. Before designating the roads of such system, the State Highway Commission shall request the co-operation and assistance of the boards of supervisors of the respective counties, and shall give due consideration to the judgment of each of said boards in such designations."

It was under this act that the primary roads in question were established and designated, and under which they existed when the bonds in question were voted for their improvement.

Chapter 237 of the Acts of the Thirty-eighth General Assembly provided in part as follows:

"The highways of the state are, for the purpose of this act, divided into two systems, to wit: the primary road system and the secondary road system. The primary road system shall embrace those main market roads (not including roads within cities), which connect all county seat towns and cities and main market centers, and which have already been designated under section 2 of chapter 249 of the laws of the thirty-seventh general assembly of the state of Iowa."

The Forty-second General Assembly, by Chapter 101, Section 2, amended this statute by providing that the primary road system shall not include roads within cities *and towns*. See Code 1931, Section 4755-b2.

From the foregoing it is apparent that the legislature expressly provided that the primary road system should not include roads within cities and towns. There was, however, other legislation respecting roads that are situated within cities and

towns. This legislation first appeared in Chapter 237 of the Acts of the Thirty-eighth General Assembly, in Section 35, as follows:

"The board of supervisors shall not drain, grade or hard-surface any highway within the limits of cities. Draining and grading on the primary system within towns shall be done by said town at its own expense. The board of supervisors is hereby given plenary jurisdiction to hard-surface, within any town, any road or street which is a continuation of the primary road system of the county, providing that no hard-surfacing constructed hereunder in any town shall exceed eighteen feet in width. After the completion of such improvement the same shall be maintained by the town and such town shall rest under the same obligation of care as to such improvement as is now provided by law for roads and streets generally. Any such town, through its council, and each county of the state, through its board of supervisors, are hereby authorized to enter into written agreements, subject to the approval of the state highway commission, to determine the location of such improvements within such towns. In case of disagreement, the matter shall be referred to the state highway commission, whose decision shall be final."

The Extra Session of the Fortieth General Assembly, by Chapter 8, Section 19, provided as follows:

"The board of supervisors is hereby given plenary jurisdiction subject to the approval of the council to purchase or condemn right-of-way therefor and grade, drain, gravel, or hard-surface any road or street which is a continuation of the primary road system of the county and which is:

"1.  Within any town, or

"2.  Within any city, including cities acting under special charter, having a population of less than twenty-five hundred, or

"3.  Within that part of any city, including cities acting under special charter, where the houses or business houses average not less than two hundred (200) feet apart.

"The primary road fund shall not be charged with the cost of hard-surfacing within the cities and towns specified above in

excess of the cost of hard-surfacing which is eighteen (18) feet in width.

"After the completion of such improvement the same shall be maintained by the city or town and such city or town shall rest under the same obligation of care as to such improvements as is now provided by law for roads and streets generally.

"Any such city or town through its council and each county of the state through its board of supervisors are hereby authorized to enter into written agreements subject to the approval of the state highway commission to determine the location of such improvements within such cities or towns. In case of disagreement the matter shall be referred to the state highway commission, whose decision shall be final. The board of supervisors shall not drain, grade, gravel or hard-surface any highway within the limits of cities other than those specified herein."

The Forty-second General Assembly, by Chapter 101, Section 29, further amended this statute to read as follows:

"The state highway commission is hereby given plenary jurisdiction, subject to the approval of the council, to purchase or condemn right of way therefor, and grade, drain, bridge, eliminate danger at railroad crossings, gravel, or hard-surface any road or street which is a continuation of the primary road system and which is (1) within any town, or (2) within any city, including cities under special charter having a population of less than twenty-five hundred, or (3) within that part of any city, including cities acting under special charter where the houses or business houses average not less than two hundred feet apart.

"The primary road fund shall not be charged with the cost of hard-surfacing within cities and towns specified above in excess of the cost of hard-surfacing which is twenty feet in width."

See Section 4755-b26, Codes 1927, 1931.

It is thus apparent that the several statutes in terms provide that the primary roads shall *not* include roads within cities and towns, and yet the State Highway Commission now has "plenary jurisdiction" to *improve* "any road or street which is *a continuation of the primary road system * * * * within that*

part of any city * *, * where the houses or business houses average not less than two hundred feet apart.'' (Writer's italics.)

We must reconcile the statutes to carry out the legislative intent if this can reasonably be done.

Obviously, the act defining what shall comprise the primary road system includes therein only roads *connecting* certain cities and towns, and expressly excludes therefrom roads that are *within* cities and towns. It undoubtedly became apparent to the legislature that it would be a great convenience to give the Highway Commission authority to do certain specified acts with regard to certain roads within cities and towns that were located on the line of a primary road. For example, if a primary road connects with a street which is wholly unimproved, it is obviously for the convenience of public travel that the Highway Commission be authorized to improve this *connecting* street. The authority thus granted to the Highway Commission is not unlimited. It is also to be observed that no matter how wide a city or town street may be the authority given the Highway Commission is limited to expending the primary road fund to the cost of hard-surfacing *twenty feet in width*. It gives the Highway Commission no power whatever to act without the approval of the council of the municipality, and it expressly provides that the jurisdiction so conferred on the Highway Commission should be limited to improving such roads or streets as are *"a continuation of the primary road system."* The Act does not make such roads or streets within a city or town a part of the "primary road system." It does not purport so to do. It does give the Highway Commission authority to *improve* certain roads and streets of the municipality if the city council approves thereof. It does not appear from the statute that the legislature had any intent to affect the municipal responsibility in regard to such streets. The power conferred on the Highway Commission is to *improve* such streets, but the duties and responsibilities of the municipality in relation thereto do not appear to have been divested by the legislature. It is also apparent from the statute that the legislature contemplated that the cost of the improvement within a municipality by the Highway Commission should be paid out of the general state primary road fund, the statute declaring: ''The primary road

fund shall not be charged with the cost of hard-surfacing within cities and towns * * * in excess of the cost of hard-surfacing which is twenty feet in width.''

The primary road fund is defined by Code Section 4755-b3. It does not include the special funds voted by a county for the purpose of improving local roads in the county. The authority given the Highway Commission to hard-surface roads or streets in a town or city not exceeding twenty feet in width, and to use the state primary road fund to pay therefor, is a very different thing than making the primary road system include roads and streets in cities and towns when the legislature expressly declared that they shall *not* be so included.

We are of opinion that the two statutes in question can and should be considered together, and when this is done we think it clear that roads and streets in cities and towns are *not* part of the primary road system of the state but are expressly excluded therefrom by the legislature, and the power conferred on the Highway Commission in respect to such roads and streets does not make them a part of the primary roads of the county.

Having reached this conclusion, it of necessity follows that the improvement contemplated under the record in this case, wholly within the limits of Sioux City, was not a part of the ''primary roads'' of Woodbury County. It is to be remembered that the Highway Commission is not a party to this action and the appellant does not seek to enjoin said Commission from making the improvement in question. The sole question at this point is whether or not the board of supervisors can sell the bonds of the county and use the money for said improvement. The question submitted to the electors was solely one of issuing bonds to improve *''the primary roads''* of Woodbury County. The primary roads of the county did not include the proposed improvement, which is wholly within Sioux City. The proceeds of the bonds can only be used for the purpose for which they were authorized by the voters. Harding v. Board of Supervisors, 213 Iowa 560. It follows that appellant was entitled to an injunction restraining the appellee board of supervisors from diverting the proceeds of said bonds to any other purpose than the improvement of the primary roads of Woodbury County,

**1158**

which, under the very terms of the statute, *do not* "include roads or streets within cities and towns."

We are not to be understood as holding that the Highway Commission may not use the general primary road fund of the state for such improvement under the statute. What we are holding, and all we are holding, is that the board of supervisors cannot divert the proceeds of the bonds voted to improve the primary roads of Woodbury County to the purpose of improving roads and streets that are expressly excluded by statute from the primary road system.

It follows that the order of the district court denying the injunction sought by the appellant must be—Reversed.

WAGNER, C. J., and EVANS, STEVENS, MORLING, and ALBERT, JJ., concur.

DE GRAFF and GRIMM, JJ., dissent.

KINDIG, J., takes no part.

DE GRAFF, J., (dissenting)—This case is to be determined as the law stood prior to the enactment of Chapter 101, laws of the Forty-second General Assembly, known as the "Road Control" law. The election was held in Woodbury County, June 1, 1927, and the statutes which we must construe to determine the issues were as they appear in the Code of 1924, in Chapter 241 thereof, as amended by the Forty-first General Assembly.

Section 4687, Code, 1924, states the intention of the legislature to be to divide the highways of the state into two systems, a primary and a secondary, and "to provide for the substantial and durable improvement of such primary roads of each county, to pay for said improvements on such primary roads from federal aid funds, motor vehicle registration fees, * * *."

Section 4690 created the primary road fund and provided that said fund "shall embrace all federal aid road funds, and all funds derived from year to year by the state under acts regulatory of motor vehicles, * * *."

Thus it is apparent from reading the two sections above referred to, that the primary road fund was to be used for the improvement of the primary roads. The primary roads were defined in Section 4689, Code, 1924, as follows:

"The primary road system shall embrace those main market roads (not including roads within cities), which connect all county seat towns and cities and main market centers, and which have already been designated under Section 2 of Chapter 249 of the Laws of the Thirty-seventh General Assembly, accepting the provisions of the act of congress approved July 11, 1916, known as the federal aid road act; provided that the said designation of the roads shall, for more efficient service or more economical construction of the system, and with the consent of the federal authorities, be subject to revision by the State Highway Commission. Any portion of said primary system so eliminated by any change shall revert to and become a part of the system from which originally taken * * *."

The language just quoted excludes in general "roads within cities."

It is to be observed, however, that there are special statutory provisions in regard to the use of the primary road fund within cities and towns. The legislature has recognized the fact that the primary road system does not necessarily break off at the limits of a city or town, but may continue on in one connected system through a city or town. In Section 4691, Code, 1924, this thought is put in the following language:

"Where any town or city, including special charter, commission plan and manager plan cities, having a population of less than twenty-five hundred has heretofore, and since the enactment of this chapter procured at its own expense right of way for a *primary road,* the board of supervisors is authorized to reimburse said city or town from the primary road fund for the cost of such right of way."

Also in Section 4731, as amended by Chapter 111, Acts of the Forty-first General Assembly, wherein it is said:

"The board of supervisors is hereby given plenary jurisdiction subject to the approval of the council to purchase or condemn right of way therefor and grade, drain, bridge, gravel, or hard surface any road or street which is a continuation of the primary road system of the county and which is:
"1. Within any town, or

"2. Within any city, including cities acting under special charter, having a population of less than twenty-five hundred, or

"3. Within that part of any city, including cities acting under special charter, where the houses or business houses average not less than two hundred feet apart.

"The primary road fund shall not be charged with the cost of hard surfacing within the cities and towns specified above in excess of the cost of hard surfacing which is eighteen feet in width.

"After the completion of such improvement the same shall be maintained by the city or town and such city or town shall rest under the same obligation of care as to such improvements as is now provided by law for roads and streets generally.

"Any such city or town through its council and each county of the state through its board of supervisors are hereby authorized to enter into written agreements subject to the approval of the state highway commission to determine the location of such improvements within such cities or towns. In case of disagreement the matter shall be referred to the state highway commission, whose decision shall be final. The board of supervisors shall not drain, grade, gravel, or hard surface any highway within the limits of cities other than those specified herein."

Section 4732, Code, 1924, provides:

"In the improvement of extensions of the primary road system within cities or towns hereunder, the board of supervisors shall have power to purchase or condemn the necessary right of way therefor, and such condemnation proceedings shall be under the same laws as now apply to the condemnation of right of way for roads outside of cities and towns on primary roads."

Section 4733 provides:

"Any town, through its council, may, by resolution, make application to the board of supervisors of its county for the grading, draining, graveling, or hard surfacing of any road or street in said town or along its limits, which is a continuation of the primary road system of the county, by filing the resolution making application therefor with the county auditor. The

board of supervisors shall examine said application and shall within thirty days after the filing thereof with the county auditor take action thereon. The board may approve said application in whole or in part or may wholly reject the same, whereupon the resolution, together with a record of the board's action thereon, shall be forwarded to the state highway commission for final review. The state highway commission shall examine said resolution and the action of the board thereon, and shall within thirty days make final determination thereof. * * *''

It is thus apparent that while in general the roads within cities were not included in the primary road system, certain roads within cities might be included in the system by appropriate action, under the provisions of the statutes hereinbefore referred to.

The primary road system is either to be a connected and continuous system of roads crossing the state, or, if the construction urged by appellants herein is followed, a disjointed and patchwork system, with gaps or omissions at the limits of every city through which the road would otherwise pass.

In construing the statutes involved we must take into consideration the intention of the legislature and of the people of this state, as expressed by them through their representatives, over a period of a number of years. The growth and development of the primary road system is a matter of history with which we are all familiar. It was the intention of the legislature and of the people that the primary roads should be a connected and continuous system of roads joining ''county seat towns and cities and main market centers.'' In order to provide such a system it was necessary that the roads designated as ''primary roads'' should, for the purpose of establishment and construction, be under the supervision of the board charged with the establishment and construction of the primary roads generally. Thus when a primary road was established or designated (under the provisions of the statutes hereinbefore quoted) extending through a city or town, the continuation thereof became a part of the primary road system for certain purposes, including its establishment and construction.

The election in Woodbury County at which the board of supervisors were authorized to issue and sell bonds to hasten.

the improvement of the primary roads of the county, was held under the provisions of Chapter 241, Code, 1924, and Section 4720 thereof. Nothing is contained in the provisions of the statute, or of the ballot used at the election, expressly prohibiting the use of the funds derived from the sale of bonds in the improvement of continuations of the primary road system. A large part of the taxable property of Woodbury County is within Sioux City. A major part of the motor vehicle license fees comes from residents thereof. The credit pledged to the payment of the bonds was to a considerable extent based upon the value of property in the city. Unless expressly stated in the law, or ballot used at the election, it would therefore be manifestly unfair and discriminatory to hold that the proceeds derived from the sale of these bonds could not be used to improve parts of the primary roads within the city limits. The primary road fund, as we have heretofore pointed out, may clearly be used for such purpose. We fail to find any legal reason prohibiting the use of funds derived from the sale of county primary road bonds for such purpose. The term "primary roads of the county," used in the statutes and in the ballot, refers to one class of roads made by the legislature, as distinguished from another class, to wit, secondary roads. This classification may be added to or changes and revisions made therein from time to time, as provided by the statutes. "Continuations" or "Extensions" of primary roads in cities, when made according to statute, become a part of the class subject to special provisions in regard to maintenance and care by the city. (Section 4731, Code, 1924.)

Unless we were to take a very narrow and restricted view of the intentions of the legislature as expressed in the statutes referred to, we must hold, as did the lower court, that funds derived from the sale of county primary road bonds, authorized as hereinbefore stated, may be used for the purpose of making the improvement contemplated in this case on continuations or extensions of the primary road system running through the city of Sioux City.

The bonds authorized by the voters of Woodbury County are merely to provide means to anticipate the primary road funds which would have been allotted to that county, and to enable the hastening of the improvement of the primary roads.

Funds derived by the sale of these bonds will not be diverted from their lawful purpose if used in the manner proposed by the appellees.

GRIMM, J., joins in dissent.